IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS FRIENDS CHABAD-LUBAVITCH, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. H-20-0388 |
| NOVA CASUALTY COMPANY, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Texas Friends Chabad-Lubavitch, Inc. ("Plaintiff") seeks to recover insurance proceeds and damages from defendant Nova Casualty Company ("Defendant") for breach of contract, unfair settlement practices, failure to promptly pay a claim, and breach of the common-law duty of good faith and fair dealing.[1] Pending before the court are Plaintiff Texas Friends Chabad-Lubavitch, Inc.'s Motion for Partial Summary Judgment Against Defendant Nova Casualty Company and Memorandum in Support Thereof ("Plaintiff's MPSJ") (Docket Entry No. 18) and Defendant's, Nova Casualty Company's, Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 19). For the reasons explained below, Plaintiff's MPSJ

---

[1]Plaintiff's First Amended Petition with jury demand against Nova Casualty Company ("First Amended Petition"), Docket Entry No. 12, pp. 7-10 ¶¶ 33-43. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

will be denied, and Defendant's MSJ will be granted in part and denied in part.

## I.  Factual and Procedural Background

Plaintiff operates the Chabad-Lubavitch Center (the "Center"), located at 10900 Fondren Road, Houston, Texas 77096.[2]  This case concerns three buildings at the Center:  the Main Education Building containing the Synagogue and Torah Day School ("Main Building") and Annexes ## 12 and 13 ("Annexes").[3]  The Main Building is a two-story structure.[4]  At the time of Hurricane Harvey the Main Building had three different roof surfaces:  the eastern section had a modified bitumen (flat) roofing membrane, the middle section had a thermoplastic polyolefin ("TPO") roof,[5] and the western section had a rubber tile play surface.[6]  The Annexes

---

[2]Id. at 2 ¶ 9; Defendant's Notice of Removal, Docket Entry No. 1, p. 2 ¶ 5.

[3]Plaintiff's MPSJ, Docket Entry No. 18, pp. 6-7 ¶ 1 (Plaintiff states that there are four buildings at the Center, but one of these is a residence that is insured under a separate policy and thus not at issue here.); Defendant's MSJ, Docket Entry No. 19, p. 7.

[4]Plaintiff's MPSJ, Docket Entry No. 18, p. 8; Defendant's MSJ, Docket Entry No. 19, p. 7.

[5]Video Conference Oral and Videotaped Deposition of Gregory T. Becker, P.E. ("Becker Deposition"), Exhibit 3 to Defendant's MSJ, Docket Entry No. 19-2, p. 260 ¶¶ 18:3-11; Defendant's MSJ, Docket Entry No. 19, p. 7.

[6]Oral and Videotaped Deposition of Corporate Representative of Texas Friends of Chabad-Lubavitch, Inc., through Chaim Tzvi Lazaroff, Exhibit 2 to Defendant's MSJ, Docket Entry No. 19-2, p. 235 ¶¶ 126:4-21; see also Becker Deposition, Exhibit 3 to
(continued...)

are converted apartment buildings used as classrooms and additional storage.[7] Defendant insured the Main Building and Annexes under a Commercial Property Policy No. CF1-ML-10001305-00 (the "Policy").[8] The effective dates for the Policy are June 14, 2017, to June 14, 2018.[9]

Hurricane Harvey impacted the Center from August 25, 2017, through August 29, 2017.[10] Defendant retained a meteorologist who estimates that the amount of rainfall at the Center was between 30-35 inches.[11] Plaintiff retained an engineer who estimates that the rainfall was between 35-40 inches.[12]

Plaintiff asserts and Defendant does not deny that water leaked into the Main Building during Hurricane Harvey and caused

---

(...continued)
Defendant's MSJ, Docket Entry No. 19-2, p. 259 ¶¶ 16:16-23 (explaining that the western portion was a "playground play area"); Defendant's MSJ, Docket Entry No. 19, p. 8.

[7]Plaintiff's MPSJ, Docket Entry No. 18, p. 8; Defendant's MSJ, Docket Entry No. 19, p. 7.

[8]Plaintiff's MPSJ, Docket Entry No. 18, p. 7 ¶ 2; Defendant's MSJ, Docket Entry No. 19, p. 5.

[9]Common Policy Declarations, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 29.

[10]Plaintiff's MPSJ, Docket Entry No. 18, p. 7 ¶ 7; Defendant's MSJ, Docket Entry No. 19, p. 8.

[11]Analysis of Weather Conditions at 10900 Fondren Road, Houston, Texas, during Hurricane Harvey (August 25-29, 2017), prepared by Thomas C. Moore, Exhibit 3 to Plaintiff's MPSJ, Docket Entry No. 18-3, p. 5.

[12]Storm Event Damage Cause and Origin Assessment, Report of Findings, prepared by Gregory T. Becker, P.E., Exhibit 5 to Plaintiff's MPSJ, Docket Entry No. 18-5, p. 16.

substantial damage to the building's interior,[13] but the parties disagree as to how the leak occurred. Defendant argues that water penetrated the Main Building through unsealed separations that had formed around the building's roof and windows before Hurricane Harvey.[14] Plaintiff's engineer agreed that some of the separations in the flashing seals predated Hurricane Harvey,[15] but Plaintiff also argues that "additional water intrusion occurred through seals which became separated due to the immense weight and pressure from the rain collecting on the roof."[16] The Annexes also sustained water damage, and the means of entry there is also disputed. Plaintiff argues that the volume of water during Hurricane Harvey overwhelmed the buildings' gutters,[17] while Defendant argues that the water intruded through "pre-existing openings . . . ."[18]

Plaintiff timely made a claim with Defendant, and Defendant assigned a claim number 19-00087854 000.[19] On January 8, 2018,

---

[13]Plaintiff's MPSJ, Docket Entry No. 18, p. 9.

[14]Defendant's MSJ, Docket Entry No. 19, p. 9.

[15]Becker Deposition, Exhibit 3 to Defendant's MSJ, Docket Entry No. 19-2, p. 263 ¶¶ 29:1-10.

[16]Plaintiff Texas Friends of Chabad-Lubavitch, Inc.'s Response in Opposition to Defendant Nova Casualty Company's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 21, p. 5.

[17]Plaintiff's MPSJ, Docket Entry No. 18, p. 9.

[18]Defendant's Response, Docket Entry No. 20, p. 8.

[19]Nova Denial Letter, Exhibit 2 to Plaintiff's MPSJ, Docket Entry No. 18-2, p. 1.

Defendant sent Plaintiff a letter denying Plaintiff's claim.[20] The letter explained that "the roof did not sustain damage from a covered cause of loss" and that there was therefore "no applicable coverage for the leaking roof or resulting interior water damage in this incident."[21] The letter further explained that windows at the property "were found to be leaking on multiple elevations[,]" that there was "sustained repeated leakage and the caulking [was] worn allowing water seepage[,]" and that "[c]ontinuous water seepage, wear and tear and maintenance are excluded."[22] Defendant found some storm-related damage to the fencing around the Center but valued the damage at below the Policy's deductible.[23] The letter also acknowledged damage caused by "[f]lood and surface water" as well as "[e]arth movement, settlement and cracking[,]" all of which Defendant said were excluded under the Policy.[24]

On January 7, 2020, Plaintiff filed suit against Defendant in the 333rd Judicial District Court of Harris County, Texas.[25] Plaintiff asserted (i) breach of contract, (ii) unfair settlement practices, (iii) violation of the Texas Prompt Payment of Claims

---

[20]Id. at 3.

[21]Id.

[22]Id.

[23]Id.; First Amended Petition, Docket Entry No. 12, p. 4 ¶ 17.

[24]Nova Denial Letter, Exhibit 2 to Plaintiff's MPSJ, Docket Entry No. 18-2, p. 3.

[25]Plaintiff's Original Petition ("Original Petition"), Exhibit A to Defendant's Notice of Removal, Docket Entry No. 1-3, pp. 2-3.

Act ("TPPCA"), and (iv) breach of the duty of good faith and fair dealing.[26]

On February 4, 2020, Defendant timely removed the case to this court on the basis of diversity jurisdiction.[27]  On June 16, 2020, Plaintiff filed its First Amended Petition.[28]  Plaintiff moved for partial summary judgment on March 5, 2021,[29] and Defendant moved for summary judgment that same day.[30]  Defendant filed a response to Plaintiff's MPSJ on March 25, 2021.[31]  Plaintiff filed a response to Defendant's MSJ on March 26, 2021.[32]  Plaintiff filed a reply in support of its own motion for partial summary judgment on April 1, 2021.[33]

## II.  __Standard of Review__

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

---

[26]__Id.__ at 9-12 ¶¶ 34-44.

[27]Defendant's Notice of Removal, Docket Entry No. 1.

[28]First Amended Petition, Docket Entry No. 12.

[29]Plaintiff's MPSJ, Docket Entry No. 18.

[30]Defendant's MSJ, Docket Entry No. 19.

[31]Defendant's, Nova's, Response to Plaintiff's Motion for Partial Summary Judgment ("Defendant's Response"), Docket Entry No. 20.

[32]Plaintiff's Response, Docket Entry No. 21.

[33]Plaintiff Texas Friends of Chabad-Lubavitch, Inc.'s Reply in Support of Its Motion for Partial Summary Judgment Against Defendant Nova Casualty Company ("Plaintiff's Reply"), Docket Entry No. 22.

a matter of law." Fed. R. Civ. P. 56(a). A material fact is one likely to reasonably affect the outcome of a case. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not <u>negate</u> the elements of the nonmovant's case." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting <u>Celotex</u>, 106 S. Ct. at 2553). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. <u>Id.</u>

In establishing a genuine dispute of material fact, the party opposing summary judgment must set forth specific facts establishing a genuine dispute worthy of trial. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). "[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." <u>Duffy v. Leading Edge Products, Inc.</u>, 44 F.3d 308, 312 (5th Cir. 1995).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." <u>Reeves v.</u>
<u>Sanderson Plumbing Products, Inc.,</u> 120 S. Ct. 2097, 2110 (2000).
The court resolves factual controversies in favor of the nonmovant,
"but only when there is an actual controversy, that is, when both
parties have submitted evidence of contradictory facts." <u>Little,</u>
37 F.3d at 1075.

When a movant presents sufficient evidence that no genuine
dispute of material fact exists, the burden of production shifts to
the non-movant. <u>Matsushita Electric Industrial Co., Ltd. v. Zenith</u>
<u>Radio Corp.,</u> 106 S. Ct. 1348, 1356 (1986). If a party fails to
properly support an assertion of fact or fails to properly address
another party's assertion of fact, the court may:

(1) give an opportunity to properly support or address
the fact;

(2) consider the fact undisputed for purposes of the
motion;

(3) grant summary judgment if the motion and supporting
materials—including the facts considered undisputed—
show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).


### III.  <u>The Policy</u>

**A.**  **"Covered Cause of Loss"**

The Policy states that Defendant will pay for "direct physical
loss of or damage to Covered Property . . . caused by or

-8-

resulting from any Covered Cause of Loss."[34]  The Policy further
provides that "[w]hen Special is shown in the Declarations, Covered
Cause of Loss means direct physical loss unless the loss is
excluded or limited in [the Policy]."[35]  The Policy's Declaration
pages include the word "Special" under the heading "Covered Causes
of Loss."[36]  The court will therefore consider direct physical
damage to covered property as a Covered Cause of Loss unless an
exclusion or limitation applies.

## B.  Limitations

Section C of the Policy, entitled "Limitations," provides in
part that

> 1.  We will not pay for loss of or damage to property,
> as described and limited in this section.  In
> addition, we will not pay for any loss that is a
> consequence of loss or damage as described and
> limited in this section.

> c.  The interior of any building or structure, or
> to personal property in the building or
> structure, caused by or resulting from rain,
> snow, sleet, ice, sand or dust, whether driven
> by wind or not, unless:

> (1)  The building or structure first sustains
> damage by a Covered Cause of Loss to its
> roof or walls through which the rain,
> snow, sleet, ice, sand or dust enters; or

---

[34]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1,
p. 57 ¶ A.

[35]Id. at 117 ¶ A.

[36]Id. at 53.

> (2)  The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.[37]

The court construes Limitation 1(c)(1) as precluding coverage for water damage to a building's interior unless the building first sustained damage by a Covered Cause of Loss that allowed the water to enter.

## C.  Exclusions and Exceptions

Section B of the Policy provides that Defendant "will not pay for loss or damage caused by or resulting from"[38] several enumerated Exclusions, such as "wear and tear;" "decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;"[39] and

> c.  Faulty, inadequate, or defective:
>
> (1)  Planning, zoning, development, surveying, siting;
>
> (2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
> (3)  Materials used in repair, construction, renovation or remodeling; or
>
> (4)  Maintenance;
>
> of part or all of any property on or off the described premises.[40]

---

[37]_Id._ at 122.

[38]_Id._ at 119 ¶ B.2.

[39]_Id._ ¶ B.2.d(1)&(2).

[40]_Id._ at 120 ¶ B.3.c.

Subsection B.2.k provides that Defendant will not pay for loss or damage caused by or resulting from "[c]ollapse."[41] Subsection k defines "collapse" as

> (1) An abrupt falling down or caving in;
>
> (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or
>
> (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.[42]

This exclusion k., does not apply:

. . .

(b) To collapse caused by one or more of the following:

. . .

> (iii) Weight of rain that collects on a roof.[43]

Subsection B.2.f excludes coverage for

> Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.[44]

## IV. Analysis

### A. "Collapse"

Plaintiff argues that the weight of rainwater collecting on the roof during Hurricane Harvey caused the Main Building's roof

---

[41] Id. ¶ B.2.k.

[42] Id. ¶ B.2.k(1)-(3).

[43] Id. at 120.

[44] Id. at 119 ¶ B.2.f.

seams to separate.[45] Thus Plaintiff argues that the resulting water damage is covered under the exception to the Subsection k exclusion for "collapse."[46] Defendant responds that the exception does not apply because the separations in the roof seals existed before Hurricane Harvey and were not caused by the weight of rainwater.[47] Defendant argues that the separations were caused by "inadequate maintenance, latent defect, or defective construction," thus precluding coverage under Section B Exclusions 3(c)(2), (3), and (4).[48] Defendant further argues that this rain damage is not the result of a Covered Cause of Loss and thus Limitation 1(c)(1) explicitly precludes coverage.[49]

Whether the separations in the roof of the Main Building were caused by preexisting wear or by the weight of rainwater from Hurricane Harvey is a fact question. Whether that question is material depends on how the Policy defines "collapse." If the separation of roofing seals constitutes "collapse" within the meaning of the Policy, the existence of coverage may turn on whether the separations were caused by the weight of collected rainwater. That would make this fact issue material. See Liberty Lobby, Inc., 106 S. Ct. at 2510.

---

[45]Plaintiff's MPSJ, Docket Entry No. 18, p. 15.

[46]Id.

[47]Defendant's Response, Docket Entry No. 20, pp. 1-2.

[48]Defendant's MSJ, Docket Entry No. 19, pp. 5, 12.

[49]Id. at 12.

Defendant argues that "collapse" should be defined according to the language of Section D of the Policy.[50] That section provides "Additional Coverage" for "an abrupt collapse," which it defines as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."[51]

But Plaintiff is not seeking "Additional Coverage" under Section D of the Policy — Plaintiff is asserting that exception (b)(iii) applies to the Subsection B.2.k exclusion. Subsection B.2.k provides a more expansive definition of "collapse" than the definition that Defendant offers. Under Subsection k any "cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion" is a "collapse" if it "relates to" a "[l]oss of structural integrity, including separation of parts of the property . . . ."[52] Subsection k does require that "collapse" includes "[a]n abrupt falling down or caving in[,]" but it offers this definition along with the others cited above, and it connects these definitions with the disjunctive "or."[53] Plaintiff therefore does not need to show that the Main Building fell down or caved in. Plaintiff need not even show that the weight of rainwater on the

---

[50]Defendant's MSJ, Docket Entry No. 19, pp. 14-15.

[51]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 123.

[52]Id. at 120.

[53]Id.

-13-

roof was the initial cause of the separations — if, for example, the weight of rainwater caused pre-existing separations to expand, that would be an "expansion" "relat[ing] to" "separation of parts of the property[,]" and would thus be a collapse.

Defendant argues that Plaintiff's definition of "collapse" is "too expansive and unreasonable."[54] Perhaps it is expansive, but it is the definition that the Policy provides and therefore it controls the court's decision. Defendant also argues that "'[s]tructural integrity' means integrity of the whole structure, not just some component part of the structure[,]"[55] but that is not what the Policy says; the Policy defines "loss of structural integrity" as including "separation of parts of the property or property in danger of falling down or caving in . . . ."[56] Defendant notes that the Main Building's roof "was not in danger of falling or caving in[,]"[57] but Defendant ignores the disjunctive "or" that connects the phrase "separation of parts of the property" to the phrase "property in danger of falling down or caving in".[58] Defendant cites precedent construing the meaning of the word

---

[54]Defendant's Response, Docket Entry No. 20, p. 3.

[55]Id.

[56]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 120.

[57]Defendant's Response, Docket Entry No. 20, p. 3.

[58]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 120.

"collapse,"[59] but the court need not look to case law to define a term that the Policy has defined without ambiguity. See Evanston Insurance Co. v. Legacy of Life, Inc., 370 S.W.3d 377, 381 (Tex. 2012) ("When an insurance policy defines its terms, those definitions control.") (citing Trinity Universal Insurance Co. v. Cowan, 945 S.W.2d 819, 823 (Tex. 1997)).

The court therefore concludes that there is a genuine dispute of material fact regarding coverage of damage to the Main Building. If the weight of accumulated rainwater neither caused nor exacerbated the separations in the Main Building's roof, the exclusion at Subsection k would apply and there would be no coverage. But if the weight of accumulated rainwater caused or exacerbated those separations, the exception to the exclusion would apply, and there would be coverage.

Both parties' motions for summary judgment on this issue will therefore be denied.

## B. "Seepage or Leakage"

Subsection B.2.f of the Exclusions section excludes coverage for damage from "[c]ontinuous or repeated seepage or leakage of water . . . that occurs over a period of 14 days or more."[60] Plaintiff argues that this implicitly extends coverage to water damage caused by seepage or leakage that occurs over periods of

---

[59]Defendant's Response, Docket Entry No. 20, pp. 3-4.

[60]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 119 ¶ B.2.f.

-15-

less than fourteen days.[61] Plaintiff argues that because Hurricane Harvey affected the Center for less than fourteen days (about four days), water damage resulting from leakage or seepage during the storm is covered under the Policy.[62]

Defendant does not dispute that the Main Building and Annexes experienced leakage and seepage during Hurricane Harvey, but argues that Limitation 1(c)(1) nevertheless precludes coverage.[63] That provision states that Defendant "will not pay for loss of or damage to . . . . [t]he interior of any building . . . caused by or resulting from rain" unless "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters."[64] Defendant argues that Plaintiff has "misconstrue[d] the alleged seepage or leakage of water as the Covered Cause of Loss. The intrusion of the water would be the result of the Covered Cause of Loss (if there was one) rather than the cause."[65] Plaintiff argues that "the structure's roof and walls sustained damage[] from seepage of water . . . which is how the water entered into the interior."[66] Thus Plaintiff

---

[61]Plaintiff's MPSJ, Docket Entry No. 18, p. 17.

[62]Id. at 18.

[63]Defendant's Response, Docket Entry No. 20, p. 9.

[64]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 122 ¶ C.1.c(1).

[65]Defendant's Response, Docket Entry No. 20, p. 9.

[66]Plaintiff's Response, Docket Entry No. 21, p. 9.

argues that the damage allegedly caused by seepage is a Covered Cause of Loss, and since it allowed entry of more water, the resulting damage is covered under the Policy.

The court is persuaded by Plaintiff's reading of the Policy. If leakage or seepage causes direct physical damage to the covered property, the leakage or seepage would be a Covered Cause of Loss[67] unless it is "continuous," i.e. ongoing for a period of more than fourteen days.[68] If that Covered Cause of Loss enabled additional rainwater to enter the property and do further damage to the interior, Limitation 1(c)(1) (providing that interior rain damage is covered only if the building first sustains damage by a Covered Cause of Loss through which the rain enters) would be satisfied, and there would also be coverage for the interior rain damage. This reading also addresses Defendant's argument that "[t]he absence of an exclusion does not automatically mean [] the existence of coverage."[69] If seepage or leakage amounts to a direct physical loss, and if no exclusion or limitation applied, then the seepage/leakage would be covered under the provision of the Policy that defines "Covered Cause of Loss."[70]

---

[67]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 57.

[68]Id. at 119.

[69]Defendant's Response, Docket Entry No. 20, p. 8.

[70]Policy, Exhibit 1 to Plaintiff's MPSJ, Docket Entry No. 18-1, p. 57.

There is a genuine dispute of a material fact because Defendant asserts that water entered the Main Building and the Annexes through separations in the buildings' structures that predated Hurricane Harvey.[71] The court has already addressed Defendant's argument that the interior water damage to the Main Building was the result of water leaking through preexisting separations in the roof. As for the Annexes, Defendant argues that the "intrusion of water [into the Annex Buildings] occurred due to pre-existing openings that were susceptible to gutter overflow."[72] Plaintiff may be right that leakage or seepage created openings that allowed water to enter the buildings. But if those openings predated Harvey, they might have been the product of leakage or seepage that occurred for more than fourteen days, in which case the resulting interior water damage would be excluded under Subsection (f). Because of this fact dispute, Plaintiff's motion for summary judgment on this point will be denied.

## C. The Texas Prompt Payment of Claims Act (TPPCA)

Plaintiff alleges that Defendant violated Tex. Ins. Code § 542.055 ("Defendant failed to meet its obligations . . . regarding the timely acknowledgment of Plaintiff's claim, beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim

---

[71]Defendant's Response, Docket Entry No. 20, pp. 1-2, 8.

[72]Id. at 8.

within [thirty days] of receiving notice of Plaintiff's claim.");[73] that Defendant failed to accept or deny Plaintiff's full and entire claim within fifteen business days of receiving "all necessary information" as required by Tex. Ins. Code § 542.056;[74] and that Defendant "delayed full payment of Plaintiff's claim longer than [the sixty days] allowed" under Tex. Ins. Code § 542.058, despite the fact that "[t]he Property's covered damages under the Policy were made known to Defendant at the outset of the Claim investigation . . . ."[75] Defendant seeks summary judgment on all of Plaintiff's prompt-payment claims, arguing that they fail as a matter of law.[76]

Tex. Ins. Code § 542.055 provides that an eligible surplus lines insurer shall have thirty business days from the date it receives notice of a claim to "(1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." Defendant states, and Plaintiff does not deny, that Defendant is a surplus lines insurer,[77] and therefore the thirty-business-day time limit applies. Defendant further states that

---

[73]First Amended Petition, Docket Entry No. 12, p. 6 ¶ 25.

[74]Id. ¶ 26.

[75]Id. ¶ 27.

[76]Defendant's MSJ, Docket Entry No. 19, p. 20.

[77]Defendant's MSJ, Docket Entry No. 19, p. 20.

because this was a Hurricane Harvey claim, the Commissioner of Insurance extended the above deadlines by an additional fifteen days pursuant to Tex. Ins. Code § 542.059(b).[78] The record reflects that Plaintiff's claim was reported on November 3, 2017,[79] and that Defendant acknowledged and began investigating Plaintiff's claim on November 6, 2017.[80] Defendant's contemporaneous Claim Notes show that Defendant left several messages for the Plaintiff's representative about an inspection.[81] Defendant cites these facts in its motion for summary judgment,[82] and Plaintiff does not dispute any of them. Accordingly, the court takes as an undisputed fact that Defendant timely acknowledged and began investigating Plaintiff's claim. Plaintiff's Tex. Ins. Code § 542.055 claim thus fails as a matter of law, and Defendant is entitled to summary judgment on this claim.

Tex. Ins. Code § 542.056 requires an insurer to "notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." Tex. Ins. Code § 542.056(a).

---

[78]Id. See Texas Commissioner of Insurance Bulletin No. B-0022-17, Exhibit 8 to Plaintiff's MPSJ, Docket Entry No. 19-2, p. 371.

[79]Claims Notes, Exhibit 5 to Defendant's MSJ, Docket Entry No. 19-2, pp. 334, 339.

[80]Id. at 328-330.

[81]Id. at 324.

[82]Defendant's MSJ, Docket Entry No. 19, p. 20.

-20-

Plaintiff alleges that Defendant violated this provision because "Defendant's adjuster inspected the Property on approximately November 21, 2017[,] yet delayed providing Plaintiff with a claim decision until approximately June 8, 2018 . . ."[83] Defendant has stated that the denial letter was actually sent January 8, 2018,[84] and has attached a copy of the letter as proof.[85] Moreover, Plaintiff acknowledges elsewhere in its First Amended Petition that the letter was sent on January 8, 2018.[86] Nevertheless, Defendant does not rebut Plaintiff's implicit assertion that Defendant had "all necessary information"[87] to grant or deny the claim once its investigation had been completed on November 21, 2017. Fifteen business days after that date would have been December 12, 2017. The Texas Commissioner of Insurance extended the deadline by fifteen days, to December 27, 2017. The denial letter was therefore over a week late pursuant to Tex. Ins. Code § 542.056(a). It is possible that Defendant needed additional "items, statements and forms" before it could "secure final proof of loss[,]" but Defendant has not made this argument. The court therefore concludes that Defendant had all the materials it needed to deny

---

[83]First Amended Petition, Docket Entry No. 12, p. 9 ¶ 41(b).

[84]Defendant's MSJ, Docket Entry No. 19, p. 20.

[85]Nova Denial Letter, Exhibit 2 to Plaintiff's MPSJ, Docket Entry No. 18-2, p. 1.

[86]First Amended Petition, Docket Entry No. 12, pp. 3-4 ¶¶ 14-15.

[87]First Amended Petition, Docket Entry No. 12, p. 6 ¶ 26.

Plaintiff's claim when its investigation concluded on November 21, 2017, and that the denial that Defendant sent on January 8, 2018, was untimely under Tex. Ins. Code § 542.056(a). Defendant's motion for summary judgment as to this claim will be denied.

Tex. Ins. Code § 542.058 provides that

> if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

An insurer who is found to have violated that section is liable to pay, "in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees." Tex. Ins. Code § 542.060(a). To prevail on its motion for summary judgment on Plaintiff's § 542.058 claim, Defendant would have to show "that it [could] owe no TPPCA damages as a matter of law." Barbara Technologies Corp. v. State Farm Lloyds, 589 S.W.3d 806, 809 (Tex. 2019). This would require Defendant to show as a matter of law that it can owe no damages, interest, or attorney's fees. See id.

Defendant argues that "no additional money is owing on the claim because the water damage is not covered[,]" and that "there is no amount due that is being withheld."[88] But there is a genuine factual dispute over whether the water damage is covered, and thus

---

[88]Defendant's MSJ, Docket Entry No. 19, p. 19.

whether some amount due is being withheld. If Defendant is incorrect and Policy proceeds are due, those amounts are untimely as a matter of law, warranting penalty interest under Tex. Ins. Code § 542.060. "[A]n insurer's acceptance and partial payment of the claim within the statutory deadline does not preclude liability for interest on amounts owed but unpaid when the statutory deadline expires." <u>Hinojos v. State Farm Lloyds,</u> 619 S.W.3d 651, 658 (Tex. 2021). Defendant has not met its summary-judgment burden of showing as a matter of law that it cannot owe any additional proceeds, interest, or attorney's fees. <u>See Barbara Technologies Corp.,</u> 589 S.W.3d at 809. Defendant's motion for summary judgment as to Plaintiff's § 542.058 claim will be denied.

## D. Bad Faith

Plaintiff claims that Defendant breached its common law duty of good faith and fair dealing by denying or delaying payment "when Defendant knew or should have known that its liability to Plaintiff was reasonably clear."[89] Defendant moves for summary judgment on Plaintiff's bad faith claims, arguing that they fail as a matter of law.[90]

"Insurance coverage claims and bad faith claims are by their nature independent. But, in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer

---

[89]First Amended Petition, Docket Entry No. 12, p. 10 ¶ 43.

[90]Defendant's MSJ, Docket Entry No. 19, p. 17.

-23-

breached the contract." <u>Liberty National Fire Insurance Co. v.</u>
<u>Akin,</u> 927 S.W.2d 627, 629 (Tex. 1996) (internal citations omitted).
"[O]ne element of a bad faith claim is an absence of a reasonable
basis for denying or delaying payment of benefits." <u>Republic</u>
<u>Insurance Co. v. Stoker,</u> 903 S.W.2d 338, 341 (Tex. 1995). An
insurer's basis for denying or delaying payment can be "reasonable"
even if it eventually turns out to be erroneous. <u>See Thompson v.</u>
<u>Zurich American Insurance Co.,</u> 664 F.3d 62, 66 (5th Cir. 2011)
(citing <u>Lyons v. Millers Casualty Insurance Co. of Texas,</u> 866
S.W.2d 597, 600 (Tex. 1993)).

> Evidence that merely shows a bona fide dispute about the
> insurer's liability on the contract does not rise to the
> level of bad faith. Nor is bad faith established if the
> evidence shows the insurer was merely incorrect about the
> factual basis for its denial of the claim, or about the
> proper construction of the policy. A simple disagreement
> among experts about whether the cause of the loss is one
> covered by the policy will not support a judgment for bad
> faith. To the contrary, an insured claiming bad faith
> must prove that the insurer had no reasonable basis for
> denying or delaying payment of the claim, and that it
> knew or should have known that fact.

<u>Transportation Insurance Co. v. Moriel,</u> 879 S.W.2d 10, 17-18 (Tex.
1994) (internal quotations and citations omitted).

"[A]n insurer's reliance upon an expert's report, standing
alone, will not necessarily shield the carrier [from an insured's
claim of bad faith] <u>if</u> there is evidence that the report was not
objectively prepared or the insurer's reliance on the report was
unreasonable." <u>State Farm Lloyds v. Nicolau,</u> 951 S.W.2d 444, 448
(Tex. 1997) (emphasis added) (internal citation omitted).

-24-

Defendant has presented credible testimony from its experts and from Plaintiff's experts suggesting that the separations that allowed water to damage the interior of the buildings predated Hurricane Harvey,[91] which provides a reasonable basis to conclude that the separations were not a covered cause of loss. This is not conclusive proof that coverage did not exist, but it evidences that Defendant had a reasonable basis for denying Plaintiff's claim. In response Plaintiff offers evidence that may show that coverage existed — but it has offered no evidence showing that Defendant's liability was "reasonably clear" when Defendant denied Plaintiff's claim. Plaintiff has not argued that Defendant's reliance on its experts' reports was unreasonable, nor has Plaintiff presented any evidence that the experts' reports were not objectively prepared. See Nicolau, 951 S.W.2d at 448. Plaintiff fails to provide any evidence that Defendant had "no reasonable basis for denying coverage[,]" much less that Defendant "knew or should have known" that there was no reasonable basis for denial. See Moriel, 879 S.W.2d at 18.

Plaintiff has failed to support its assertion that Defendant's liability was reasonably clear when Defendant denied coverage. Plaintiff has failed to properly address Defendant's assertion that Defendant reasonably relied on the testimony and investigative work of credible experts in denying Plaintiff's claim. In accordance

---

[91]See Defendant's MSJ, Docket Entry No. 19, p. 9; Becker Deposition, Exhibit 3 to Defendant's MSJ, Docket Entry No. 19-2, p. 263 ¶¶ 29:1-10.

with Fed. R. Civ. P. 56(e), the court will therefore accept as an undisputed fact that Defendant reasonably relied on expert reports suggesting that Plaintiff's claims should be denied and concludes that Defendant is entitled to summary judgment on Plaintiff's claims of bad faith.

## E. Unfair Settlement Practices

Plaintiff claims that Defendant committed several violations of Tex. Ins. Code § 541.060. Some of these can be addressed summarily here because they have been treated more thoroughly above: Plaintiff's allegation that Defendant violated § 541.060(a)(2)(A) (failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear) fails as a matter of law because, as discussed above, Plaintiff has not produced evidence that Defendant's liability was ever "reasonably clear." But Plaintiff's claim that Defendant violated § 541.060(a)(4) (failing to affirm or deny coverage within a reasonable time) will survive Defendant's motion for summary judgment because, as discussed above, Defendant issued a letter denying coverage over a week after the time limit provided by § 542.056. Defendant's motion for summary judgment as to that claim will be denied.

This leaves four claims of unfair settlement practices. Plaintiff alleges that Defendant violated the following provisions of the Texas Insurance Code:

(1)    § 541.060(a)(1) (misrepresenting a material fact as
       to coverage)

(2)    § 541.060(a)(3) (failing to promptly provide a
       reasonable explanation in relation to the facts and
       law related to the denial of the claim)

(3)    § 541.060(a)(7) (refusing to pay without reasonable
       investigation)

(4)    § 542.003(5) (compelling an insured to initiate a
       lawsuit to recover an amount due on a policy).[92]

Defendant argues that these allegations are without merit and
fail as a matter of law.[93]

Plaintiff alleges that Defendant misrepresented a material
fact as to coverage by representing that the damage to the property
was not covered by the Policy.[94]   This claim fails as a matter of
law because, as discussed above, Defendant had a reasonable basis
for determining that the damage to the Center was not covered by
the Policy.    Thus, a reasonable juror could not conclude that
Defendant's   denial   of   Plaintiff's   claim   constitutes   a
misrepresentation of a material fact.   See Lee v. Catlin Specialty
Insurance Co., 766 F. Supp. 2d 812, 824 (S.D. Tex. 2011) ("Catlin
had a reasonable basis for determining that the damage to the roof
was not covered by the policy.  Thus, a reasonable juror could not
conclude that Catlin's denial of Lee's claim constitutes a
misrepresentation.").

---

[92]First Amended Petition, Docket Entry No. 12, pp. 8-9
¶¶ 34-40.

[93]Defendant's MSJ, Docket Entry No. 19, p. 18.

[94]First Amended Petition, Docket Entry No. 12, pp. 4-5 ¶ 20.

-27-

Plaintiff alleges that Defendant "failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made."[95] But Plaintiff offered an explanation in its letter of January 8, 2018. The letter provided excerpts of the relevant Policy provisions that Defendant cited as precluding coverage. The letter explained that windows at the property "were found to be leaking on multiple elevations[,]" that there was "sustained repeated leakage and the caulking [was] worn allowing water seepage[,]" and that "[c]ontinuous water seepage, wear and tear and maintenance are excluded."[96] The letter also explained that "wear found around the jacks and seams of the roofing material" also allowed water seepage.[97] The letter related these facts to the relevant portions of the Policy that excluded coverage, just as § 541.060(a)(3) requires. No reasonable juror could find that Defendant failed to provide a reasonable explanation for denying coverage. Arguably Defendant did not provide this explanation "promptly," as § 541.060(a)(3) requires, but Plaintiff does not assert lack of promptness as a ground for its § 541.060(a)(3) claim. Defendant was not required to respond to arguments that Plaintiff has not made. This claim fails as a matter of law.

---

[95]Id. at 5 ¶ 22.

[96]Nova Denial Letter, Exhibit 2 to Plaintiff's MPSJ, Docket Entry No. 18-2, p. 3.

[97]Id.

Plaintiff alleges that Defendant "refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim[,]" and that Defendant instead "performed an unreasonable outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim."[98] But Plaintiff does not support this allegation with evidence, and "conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.3d at 312. The parties agree that Defendant retained an engineer to investigate the source of the water intrusion for the interior water damage.[99] Plaintiff argues that Defendant's investigation failed to account for the fact that "Plaintiff's Main Building was damaged by seepage and leakage of water[,]"[100] yet Defendant acknowledged that fact in its denial letter. Plaintiff may disagree with the conclusion of Defendant's engineer, but to survive summary judgment Plaintiff must present evidence that the investigation was unreasonable. See Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record . . ."). Plaintiff also alleges that Defendant "ignored [additional reports and

---

[98]First Amended Petition, Docket Entry No. 12, p. 6 ¶ 24.

[99]Defendant's MSJ, Docket Entry No. 19, p. 19; Plaintiff's Response, Docket Entry No. 21, pp. 18-19.

[100]Plaintiff's Response, Docket Entry No. 21, p. 17.

estimates exhibiting the full extent of damages] and continued to rely on misrepresentations about the date of the Storm and subsequent Storm and covered perils under the Policy."[101] But § 541.060(a)(7) does not require an insurer to rely on the reports of experts retained by the insured. It only requires that the insurer conduct a reasonable investigation, and there is no evidence that Defendant failed to do so. Plaintiff's § 541.060(a)(7) claim fails as a matter of law.

Plaintiff alleges that Defendant violated Tex. Ins. Code § 542.003(b)(5),[102] which prohibits "compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder[.]" This claim is without merit because no amount has been "ultimately recovered in a suit" by Plaintiff.

The court concludes that Defendant is entitled to summary judgment on Plaintiff's claims of unfair settlement practices.

## IV. Conclusion and Order

For the reasons explained above, Plaintiff Texas Friends Chabad-Lubavitch, Inc.'s Motion for Partial Summary Judgment Against Defendant Nova Casualty Company (Docket Entry No. 18) is **DENIED.**

---

[101]First Amended Petition, Docket Entry No. 12, p. 6 ¶ 24.

[102]Id. at 9 ¶ 40.

Defendant's, Nova Casualty Company's, Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED** as to Plaintiff's claims under Tex. Ins. Code §§ 541.060(a)(1), 541.060(a)(3), 541.060(a)(7), 541.060(a)(2)(A), 542.003(5), and 542.055 and as to Plaintiff's claims of bad faith.

Defendant's, Nova Casualty Company's, Motion for Summary Judgment (Docket Entry No. 19) is **DENIED** as to Plaintiff's claims under Tex. Ins. Code §§ 541.060(a)(4), 542.056(a), and 542.058.

The court views this case as appropriate for mediation. Accordingly, if the parties are unable to settle the case within 30 days from the entry of this Memorandum Opinion and Order, they shall provide the court with the name, address, e-mail address, and telephone and facsimile numbers of an agreed upon mediator.

**SIGNED** at Houston, Texas, on this the 12th day of May, 2021.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE